IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00101-REB-MJW

MARK ETHAN DUFFY,

Plaintiff,

v.

DEBBIE MOSS, Jefferson County Child Support Services,
STEPHANIE SIMPSON, Jefferson County Child Support Services,
KATIE SMITH, Jefferson County Child Support Services,
YOLANDA REDMOND, Jefferson County Child Support Services,
CASEY SHOREY, Jefferson County Child Support Services,
MARSA WILLIAMS, Colorado Child Care Assistance Program (Aspen Family Services),
FAYE GRIFFIN, Jefferson County Commissioner,
KATHY HARTMAN, Jefferson County Commissioner,
PAM RYKEN, Colorado Department of Health and Human Services,
KAREN BEYLE, Colorado Department of Health and Human Services, and
LESLIE McGREW, Colorado Department of Health and Human Services,

Defendants.

―――――――――――――――――――――――――――――――――――――――――――――――

**RECOMMENDATION ON**
**(1) PLAINTIFF'S MOTION FOR PARTIAL REMAND (Docket No. 12),**
**(2) COUNTY DEFENDANTS' MOTION TO DISMISS (Docket No. 6),**
**(3) STATE DEFENDANTS' MOTION TO DISMISS (Docket No. 16), and**
**(4) DEFENDANT MARSA WILLIAMS' MOTION TO DISMISS (Docket No. 22)**

―――――――――――――――――――――――――――――――――――――――――――――――

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before the undersigned pursuant to an Order of Reference to United

States Magistrate Judge issued by District Judge Robert E. Blackburn on January 14,

2011.  (Docket No. 4).

On January 13, 2011, defendants Debbie Moss, Stephanie Simpson, Katie

Smith, Yolanda Redmond, Casie Stokes, Faye Griffin, and Kathy Hartman (hereinafter

referred to collectively as the "County defendants") removed this action from Jefferson

County District Court, Colorado.  (Docket No. 1).  These defendants state in their Notice

of Removal (Docket No. 1) that the state court action was commenced on or about

November 16, 2010, but plaintiff did not effectuate personal service of the original

complaint upon any defendant.  On January 7, 2011, plaintiff filed an Amended

Complaint (Docket No. 2) in the state court, which was personally served upon several

of the County defendants on January 7, 2011.  (Docket No. 1 at 2).

On February 15, 2011, defendants Pam Ryken and Leslie McGrew (hereinafter

the "State defendants") filed their Consent to Removal (Docket No. 15).  They stated in

a footnote therein that "[u]pon information and belief, Defendant Karen Beye[1] has not

been served.  Ms. Beye is no longer employed by the Colorado Department of Health

and Human Services [hereinafter "CDHHS"]."  (Docket No. 15 at 1 n.1).  On February

24, 2011, defendant Williams also filed a Notice of Consent to Removal (Docket No.

21).

Now before the court for a report and recommendation are the following four

motions:  (1) Plaintiff's Motion for Partial Remand (Docket No. 12), (2) County

Defendants' Motion to Dismiss (Docket No. 6), (3) State Defendants' Motion to Dismiss

(Docket No. 16), and (4) Defendant Marsa Williams' Motion to Dismiss (Docket No. 22).

The County defendants filed a response to the plaintiff's motion to remand.  (Docket No.

14).  Plaintiff filed responses to the County defendants' and State defendants' motions

to dismiss (Docket Nos. 18 and 24) but did not file a response to defendant Williams'

---

[1]This defendant is referred to as "Karen Beyle" in the Amended Complaint.

motion to dismiss.  The County defendants and the State defendants filed replies

(Docket Nos. 25 and 26).  The court has carefully considered all of these motions

papers as well as the court's file and applicable statutes, Federal Rules of Civil

Procedure, and case law.  The court now being fully informed makes the following

findings, conclusions of law, and recommendations.

Plaintiff is proceeding *pro se.*  The court, therefore, reviews plaintiff's pleadings

and other papers liberally and holds them to a less stringent standard than those drafted

by attorneys.  Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir.

2007).  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro*

*se* complaint to less stringent standards than formal pleadings drafted by lawyers).

However, a *pro se* litigant's conclusory allegations without supporting factual averments

are insufficient to state a claim upon which relief can be based.  Hall v. Bellmon, 935

F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove

facts that have not been alleged or that a defendant has violated laws in ways that a

plaintiff has not alleged.  See Associated Gen. Contractors of Cal., Inc. v. California

State Council of Carpenters, 459 U.S. 519, 526 (1983); Whitney v. New Mexico, 113

F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations

to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake

v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not

"construct arguments or theories for the plaintiff in the absence of any discussion of

those issues").

## PLAINTIFF'S ALLEGATIONS

Plaintiff is divorced with children.  The operative pleading is his "Amended

4

Pleading of Complaint" (Docket No. 2) (hereinafter "Amended Complaint"), which

plaintiff states arises under 42 U.S.C. § 1983 (Docket No. 2 at 4).  It is not a model

pleading and contains long quotations of numerous statutes.  In a nutshell, plaintiff

makes allegations about his ex-wife's concealment of records, an erroneous court order

regarding child support, repeated erroneous or biased administrative reviews, lack of

safeguards and communication, and violations of a myriad of Colorado and federal

statutes.  Plaintiff believes all of this resulted in an inflated monthly child support

obligation and a number of disciplinary remedies imposed against him without due

process of law.  More specifically, he asserts the following in his amended pleading.

Plaintiff originally made direct payments to his former wife, but nearly two years

later, he was ordered to redirect payments to the Family Support Registry.  A court

hearing was held in Jefferson County on December 1, 2008, regarding a disputed

outstanding child support obligation and money paid to plaintiff's ex-wife.  Defendants

Jefferson County Child Support Services (hereinafter "JCCSS") caseworkers Yolonda

Redmond and Casey Shorey attended the hearing on behalf of the plaintiff's ex-wife.

Defendant Simpson, plaintiff's case worker, was notified on multiple occasions of

upcoming litigation involving the dispute and contested child support and maintenance

payments.  (Docket No. 2 at 5, ¶ 1).  The JCCSS was every much aware that plaintiff

was disputing the child support arrearage.  Following that hearing, Magistrate Chris

Voisinet issued a minute ruling on December 16, 2008, which established a $1,781.00

monthly child and spousal support obligation, retroactively applied ten months to

February 2008.  Plaintiff believes this ruling was in error for many reasons, including his

claim that the Colorado Child Care Assistance Program (hereinafter "CCCAP"), rather

than his ex-wife, made child care payments.  Based upon the court's ruling, disciplinary

remedies were applied "which carried adverse repercussions on Plaintiff's employment

(lost wages), professional reputation (defamation of character), emotional depression

(duress), financial implications (attorney fees, excessive charges related to driver's

license reinstatement, bank liens, overdraft charges, attorney fees, and court costs)."

(Docket No. 2 at 2).[2]

In addition to the court hearing, several Administrative Reviews were conducted

throughout 2008 within the JCCSS with defendant Jefferson County technician

Stephanie Simpson regarding plaintiff's disputed arrearage.  These Administrative

Reviews included several in-person meetings with Simpson during which plaintiff

presented copies of cleared checks, bank statements, and other documentary evidence

to show that plaintiff's ex-wife had been routinely paid for child support and

maintenance.

On January 18, 2010, Magistrate Voisinet entered an order allowing the child

care expenses, the validity of which had been challenged by plaintiff's attorney during

closing arguments.  Almost three months later, on April 12, 2010, Jefferson County

District Court Judge Berryhill found that Magistrate Voisinet's ruling was erroneous,

---

[2]In particular, plaintiff alleges the following disciplinary remedies.  His driver's license was suspended on October 22, 2008.  (Docket No. 2 at 5, ¶ 1).  Negative reports were given to credit reporting agencies during much of 2008 and as of the time of the amended pleading.  (Docket No. 2 at 5, ¶ 2).  In November 2008 a lien was placed on plaintiff's Chase checking account, which was liquidated that month.  (Docket No. 2 at 6, ¶ 3).  In February 2009, plaintiff's wages were garnished.  (Docket No. 2 at 8, ¶ 5).  The following month, plaintiff's federal tax refund was redirected to his ex-wife due to JCCSS's implementation of reporting procedures to the Secretary of the Treasury which reported an incorrect amount of unpaid child support.

based upon the usage of an incorrect worksheet to calculate plaintiff's child support obligation, which resulted in an overpayment. "This concluded a long lasting dispute in which the Defendants, the [JCCSS] either knew of, or should have known to be in existence while disciplinary remedies were repeatedly brought upon the Plaintiff." (Docket No. 2 at 3).

In July 2010, plaintiff requested a review or modification, which was granted and conducted by JCCSS. At first, JCCSS calculated a new monthly child support obligation of $352.00, which was rejected by plaintiff's ex-wife, who then complied with the submission of income and anticipated child care expenses. JCCSS then determined that there was no justification to grant a modification based upon the submission of anticipated child care expenses.

On October 15, 2010, CCCAP contracted through Aspen Family Services (hereinafter "Aspen"). Plaintiff's ex-wife has been receiving assistance through CCCAP administered through Aspen, and JCCSS has refused to provide records to the plaintiff regarding his children's involvement within the CCCAP program. Such assistance provides evidence that plaintiff's ex-wife "fostered an incorrect child support obligation." (Docket No. 2 at 4). JCCSS is aware that the court's order includes a substantial amount in child care and that his ex-wife is assumed to be incurring these expenses. CCCAP (Aspen) is either aware or reasonably should be aware that the ex-wife is not only receiving child support benefits, but that they include support based on a substantial child care expense incurred by the ex-wife. "So, either the [JCCSS] & the (CCCAP) are not operating properly, or [the ex-wife] has committed a "Fraudulent Act" . . . ." (Docket No. 2 at 12).

Plaintiff repeatedly attempted to identify "these unusual occurrences," but the JCCSS, the Jefferson County Commissioners (defendants Faye Griffin and Kathy Hartman), and the CDHHS "have remained dormant and unresponsive of the problems presented in relation to a program they are obligated to oversee" and the commissioners and the CDHHS "have failed to establish procedures to satisfy section U.S.C. 654 (20)(A) in which, each State must have in effect laws requiring the use of procedures, consistent with this section and with regulations of the Secretary, to increase the effectiveness of the program which the State administers under U.S.C 42-666." (Docket No. 2 at 4).

Plaintiff seeks monetary damages.  (Docket No. 2 at 15).

## MOTION FOR PARTIAL REMAND

On February 11, 2011, plaintiff filed a Motion for Partial Remand (Docket No. 12) in which he asserts the following.  He commenced this action in state court on November 16, 2010, and on the same day "notification of the Summons and complaint were delivered to stated [County] Defendants [sic] domicile." (Docket No. 12 at 2, ¶ 1). Personal service of the Summons and Amended Complaint was effected on the County defendants on January 7, 2011.  The Notice of Removal was filed on behalf of the County defendants on January 13, 2011.  The Amended Complaint contains violations of due process and equal protection rights under the Fourteenth Amendment which present federal questions, but more than thirty days elapsed since all the defendants received a copy of the initial pleadings, by service or otherwise.  Therefore, the Notice of Removal is defective.  It is further defective under 28 U.S.C. § 1446 because four of the defendants (Williams, Ryken, Beyle, and McGrew) have not joined in the removal.

8

Plaintiff nevertheless does not contest a partial remand of the state claims to the District Court in Jefferson County.

This court, however, finds that the removal is not defective as asserted by the plaintiff.  First, the County defendants correctly assert that they were not required to seek removal prior to being served in accordance with state law.  As noted by these defendants, removal of this action is governed by 28 U.S.C. § 1446(b), which states in pertinent part:  "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b).  The thirty-day time period "is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service."  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-488 (1999).  Therefore, plaintiff's alleged informal "notification" to the defendants in November did not trigger the thirty-day period.  Instead, the period began to run when service was effected on them on January 7, 2011.  Therefore, their filing of their Notice of Removal on January 13, 2011, was timely.

Furthermore, the County defendants have shown through the filing of the state Docket Sheet (Docket No. 5) that at the time they removed this matter, plaintiff had not filed any returns of service indicating personal service on any defendant.[3]  Moreover, all

---

[3]Plaintiff has not yet filed any returns of service with the court.

of the other defendants, except unserved defendant Beyle, have stated that they were

served after the Notice of Removal was filed.  Therefore, the County defendants did not

need to obtain the other co-defendants' consent prior to filing a Notice of Removal.  See

Barton v. Key Gas Corp., 2006 WL 2987025, at *1-2 (D. Colo. 2006) (attached to

Response as Ex. A-1).  In any event, the remaining served defendants consented to the

removal within thirty days of service.  On February 15, 2011, the State defendants, who

state they were served on January 26, 2011, filed their Consent to Removal (Docket No.

15).  They stated in a footnote therein that "[u]pon information and belief, Defendant

Karen Beye has not been served.  Ms. Beye is no longer employed by the Colorado

Department of Health and Human Services."  (Docket No. 15 at 1 n.1).  Plaintiff has not

filed a return of service indicating that Beyle has ever been served.  On February 24,

2011, defendant Williams (who states she was served on February 4, 2011) also filed a

Notice of Consent to Removal (Docket No. 21).

Based upon the findings above, this court recommends that the plaintiff's Motion

for Partial Remand (Docket No. 12) be denied.

## MOTIONS TO DISMISS

In their motion to dismiss (Docket No. 6), the County defendants seek dismissal

of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following

grounds: (1) all state law tort claims against them are barred by the Colorado

Governmental Immunity Act (hereinafter the "CGIA"); (2) none of the statutes cited by

the plaintiff provide a private cause of action, either explicit or implied; (3) plaintiff has

failed to assert his claims for violation of § 1983 with the particularity required by

Twombly and Iqbal as to defendants Moss, Smith, Griffin, and Hartman; (4) plaintiff fails

10

to state a claim for a due process or equal protection violation; (5) plaintiff has failed to assert a policy, practice, or custom sufficient to impose official capacity § 1983 liability on the county defendants; (6) the Eleventh Amendment bars any official capacity claim against JCCSS and individuals sued in their official capacity; and (7) all individual capacity § 1983 claims against the County defendants are barred by qualified immunity.

In the State defendants' motion to dismiss (Docket No. 26), dismissal is sought pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds: (1) plaintiff has failed to allege personal participation of either State defendant in the constitutional violations he claims, (2) the State defendants are entitled to qualified immunity, and (3) plaintiff's claims are barred by the CGIA because plaintiff's claims do not fall within any waiver of governmental immunity.

Finally, defendant Marsa Williams seeks dismissal of the plaintiff's eighth claim for relief against Williams pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) the Colorado statute cited against Williams does not provide an express or implied private cause of action, and (2) Williams' declining to provide records was required by statute.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party

11

asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic Corp., 550 U.S. at 555 (citations

12

omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from

conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of

the pleaded claims is insufficient; the complaint must give the court reason to believe

that *this* plaintiff has a reasonable likelihood of mustering factual support for *these*

claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)

(quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

### State Tort Claims

The specific claims raised in the Amended Complaint are not clearly articulated,

but the court agrees with the County and State defendants that any state law tort claims

that might be raised are barred by the CGIA and must be dismissed pursuant to Fed. R.

Civ. P. 12(b)(1).[4]  "A public entity or employee is immune from all claims that lie or could

lie in tort, unless the claim falls within one of the six limited areas for which immunity

has been waived or unless the act or omission causing the injury was willful and

wanton."  Whiteman v. El Paso Criminal Justice Center, 2011 WL 2610202, at *10 (D.

Colo. July 1, 2011).  "[T]he CGIA defines a 'public entity' as 'the state, county, city and

county, municipality, school district, special improvement district, and every other kind of

---

[4]The court notes that in response to this argument, plaintiff states that his "claims
are for unjust enrichment and contribution and [he] is seeking restitution to be made
whole.  Thus, these claims do not arise from Defendant's tortious failure to use
reasonable care, but for the cost of reimbursement.  In which, costs related to Plaintiff's
attorneys, lost wages, medical expenses, a suspended driver's license, the increased
cost of financing related to credit reporting intervention, over drafted banking costs
related to lien and levy, and other miscellaneous expenses."  (Docket No. 18 at 2).

13

district, agency, instrumentality, or political subdivision thereof organized pursuant to

law . . . .'" <u>Vuolo v. Garfield County Sheriffs</u>, 2009 WL 4250103, at *11 (D. Colo. Nov.

23, 2009) (citing § 24-10-103(5), C.R.S.).  In addition, [t]he CGIA defines a public

employee as 'an officer, employee, servant, or authorized volunteer of the public entity,

whether or not compensated, elected, or appointed."  <u>Id.</u> (citing § 24-10-103(4)(a)).

Here, the County and State defendants are "public employees" of such "public entities."

Furthermore, none of the limited areas[5] for which immunity has been waived apply here.

<u>See</u> § 24-10-106(1), C.R.S.  Finally, plaintiff has not alleged that defendants' acts were

willful and wanton.  <u>See</u> § 24-10-118(2)(a), C.R.S.  Accordingly, to the extent plaintiff

has brought any state law tort claims against the State and County defendants, or the

public entities themselves, such claims should be dismissed because this court lacks

subject matter jurisdiction.

### Claims Based Upon Alleged Violations of Statutes and Regulations

"As a general rule, § 1983 . . . authorizes suits against state actors who violate

federal statutory rights. . . .  However, the Supreme Court has created two exceptions to

the general rule.  A plaintiff may not bring a § 1983 action for violation of a statute: (1) if

---

[5]The CGIA specifically waives immunity in these areas: (1) the operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment, except emergency vehicles operating within certain statutory provisions; (2) the operation of any public hospital, correctional facility, or jail by such public entity; (3) a dangerous condition of any public building; (4) a dangerous condition of a public highway, road, or street under certain circumstances; (5) a dangerous condition of any public hospital, jail, public facility located in any park or recreation area maintained by a public entity, or public water, gas, sanitation, electrical, power, or swimming facility; and (6) the operation and maintenance of any public water facility, gas facility, sanitation facility, electrical facility, or swimming facility by such public entity. § 24-10-106(1), C.R.S.

14

Congress foreclosed private enforcement of that statute in the enactment itself, . . . or (2) if the statute does not create enforceable rights in the plaintiff." <u>Behunin v. Jefferson County Dep't of Social Servs.</u>, 744 F. Supp. 255, 257 (D. Colo. 1990).  Here, the court finds that the plaintiff may not bring a § 1983 action for violation of a federal statute and also agrees with the County and State defendants that none of the federal statutes, or even state statutes and regulations, cited and quoted in the Amended Complaint[6] expressly or impliedly create and provide plaintiff with a private cause of action.

For the federal statutes, "to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." <u>Blessing v. Freestone</u>, 520 U.S. 329, 340 (1997) (emphasis in original).  "In order to state a claim for relief under § 1983, Plaintiff bears the burden of establishing that the [statute/Act] confers upon [him] an individual **right** . . . ." <u>Hawkins v. County of Bent, Colo.</u>, – F. Sup..2d –, 2011 WL 2632866, at *2 (D. Colo. July 6, 2011) (emphasis in original).

---

[6]Plaintiff has cited: §§ 12-14.3-106(1) (Colorado Consumer Credit Reporting Act, Procedure for disputed information), 14-10-123.8, 24-4-104(3)(a) (Uniform Dissolution of Marriage Act, Access to records), 26-5-102 (Child Welfare Services - Provision of child welfare services–system reform goals), 26-13-121(2)(b) (Child Enforcement Act-Review and modification of child support orders), 26-13-122(3)(Child Support Enforcement Act, Administrative lien and attachment), 26-13-123(IV) (Child Support Enforcement Act, Drivers' licenses–suspension for nonpayment of child support-definitions), 26-13-126(5) (Child Support Enforcement Act, Authority to deny, suspend, or revoke professional, occupational, and recreational licenses), 26-13.5-103(h) (Administrative Procedure for Child Support Establishment and Enforcement; Notice of financial responsibility issued–contents), and 26-13.5-112(1.5)(b) (Administrative Procedure for Child Support Establishment and Enforcement, Modification of an order), C.R.S.; 42 U.S.C. §§ 651 (Authorization of appropriations), 654 (State plan for child and spousal support), 664 (Collection of past-due support from Federal tax refunds), 666 (requirement of statutorily prescribed procedures to improve effectiveness of child support enforcement), and 667 (State guidelines for child support awards); and 5 C.F.R. §§ 581.305 Civil Service Regulations, Honoring legal process), 581.402 (Civil Service Regulations, Maximum garnishment limitations).

15

"[W]hether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute . . . [b]ut the inquiries overlap in one meaningful respect-in either case [the court] must first determine whether Congress *intended to create a federal right*." Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002) (quotations and citation omitted).  See Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009) (quoting Gonzaga Univ, 536 U.S. at 285) ("In the implied right of action context, the primary question in determining whether a statute will support a claim under § 1983 is whether 'Congress intended to confer individual rights upon a class of beneficiaries.'").  In making this determination, the court should examine the following three factors:

> First, Congress must have intended that the provision in question benefit the plaintiff.  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Id. at 1179 (quotations omitted).  "A statute embodies congressional intent to benefit the plaintiff only if it is phrased in terms of the person benefited."  Id. (quotation omitted).

In this case, plaintiff has not shown that the federal statutes he cited in his pleading support a claim under § 1983 and/or give him a private cause of action.  In fact, the United States Supreme Court has already determined that these statutes do not give individuals a federal right to force a state agency to substantially comply with the statutes.  Blessing, 520 U.S. at 340 ("Title IV-D [of the Social Security Act, as amended, 42 U.S.C. §§ 651-669b] does not give individuals a federal right to force a state agency to substantially comply with Title IV-D.").

16

For the state statutes, "[a]n implied private right of action will not be inferred in a statute unless a clear legislative intent to create such a cause of action can be discerned." Macurdy v. Faure, 176 P.3d 880, 882 (Colo. App. 2007) (citing Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 923 (Colo. 1997)). "In making this determination, a court must consider three factors: whether the plaintiff is within a class of person intended to be benefited by the legislative enactment; whether the legislature intended to create, albeit implicitly, a private right of action; and whether an implied civil remedy would be consistent with the purposes of the legislative scheme." Id. Here, while the plaintiff may very well be within the class of persons intended to be benefitted by the various legislative enactments, he has not shown that the second and third factors have been met. Therefore, any claims that may be based upon those statutes should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

In sum, to the extent plaintiff may be basing any of his claims upon the statutes and regulations cited in his Amended Complaint, such claims should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### Official Capacity Claims

The Amended Complaint does not indicate whether the defendants are being sued in their official and/or individual capacities. It is well established that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the

state." Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994).  Therefore, to the extent

that the plaintiff's § 1983 claim against the State defendants is against them in their

official capacities for monetary damages,[7] such relief is barred by the Eleventh

Amendment, and any such claim should be dismissed with prejudice pursuant to Fed.

R. Civ. P. 12(b)(1).

    "As a general rule, Eleventh Amendment immunity does not extend to counties,

municipal corporations and other local government units."  Behunin, 744 F. Supp. at 259

(citing Moor v. County of Alameda, 411 U.S. 693, 717-21 (1973)).  Here, however, any

official capacity claim for damages against JCCSS or any of its employees should be

dismissed because in Colorado, County Departments of Human Services (formerly

known as Departments of Social Services) are arms of the state.  See Pierce v. Delta

County Dep't of Social Servs., 119 F. Supp.2d 1139, 1148 (D. Colo. 2000).

**Personal Participation**

    This court finds that plaintiff did not adequately allege in the Amended Complaint

that the State and County defendants personally participated in a denial of due process

of law or equal protection.  To state a claim, a plaintiff's complaint must "show[] that [he]

is entitled to relief."  Fed. R. Civ. P. 8(a)(c).  "This means that the plaintiff must allege

enough factual matter, taken as true to make his 'claim to relief . . . plausible on its

---

    [7]Although plaintiff claims in his responses that he "is seeking equitable relief
(injunctions) to enforce statutory or constitutional protections" (Docket No. 24 at 7, ¶ 10;
Docket No. 18 at 13, ¶ 9) and "prospective relief related to the release of his children's
CCAP records, and the [JCCSS] to conduct an uncontaminated review for modification
that presumes a correct child support obligation in connection with child care expenses
that are actually paid by the Obligee" (Docket No. 24 at 8), he did not request such relief
in his Amended Complaint.  (See Docket No. 2 at 15).

face.'" Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th cir. 2008) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007)).  "[I]f the complaint is sufficiently devoid of facts

necessary to establish liability that it 'encompass[es] a wide swath of conduct, much of it

innocent,' a court must conclude that 'plaintiff[ has] not nudged [his] claims across the

line from conceivable to plausible.'" Id.

"Individual liability under § 1983 must be based on personal involvement in the

alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has

violated the Constitution."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).  As the Tenth

Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the
> misconduct of their subordinates.  "[T]here is no concept of strict
> supervisor liability under § 1983." . . .  "This does not mean that a
> supervisor may not be liable for injuries caused by the conduct of one of
> his subordinates.  It does mean that his liability is not vicarious, that is,
> without fault on his part." . . . .
>
> Supervisors are only liable under § 1983 for their own culpable
> involvement in the violation of a person's constitutional rights.  To
> establish supervisor liability under § 1983, "it is not enough for a plaintiff
> merely to show a defendant was in charge of other state actors who
> actually committed the violation.  Instead, . . . the plaintiff must establish 'a
> deliberate, intentional act by the supervisor to violate constitutional rights.'"
> . . .  In short, the supervisor must be personally "involved in the
> constitutional violation," and a "sufficient causal connection" must exist
> between the supervisor and the constitutional violation." . . . .
>
> In order to establish a § 1983 claim against a supervisor for the
> unconstitutional acts of his subordinates, a plaintiff must first show the
> supervisor's subordinates violated the constitution.  Then, a plaintiff must
> show an "affirmative link" between the supervisor and the violation,
> namely the active participation or acquiescence of the supervisor in the
> constitutional violation by the subordinates. . . .  In this context, the

19

> supervisor's state of mind is a critical bridge between the conduct of a
> subordinate and his own behavior.  Because "mere negligence" is not
> enough to hold a supervisor liable under § 1983, a plaintiff must establish
> that the supervisor acted knowingly or with "deliberate indifference" that a
> constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).

Here, in the bulk of the Amended Complaint, plaintiff does not identify specific

unconstitutional actions by each individual defendant and instead uses averments of

actions by the "Jefferson county (CSS)," the CDHHS, and "defendants."[8]  Such general

allegations do not provide adequate notice to each defendant and do not provide the

court with sufficient information to evaluate whether a constitutional claim has been

asserted against each defendant.  See Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th

Cir. 2008) ("[T]he burden rests on the plaintiffs to provide fair notice of the grounds for

the claims made against each of the defendants.  Given the complaint's use of either

the collective term "Defendants" or a list of the defendants named individually but with

no distinction as to what acts are attributable to whom, it is impossible for any of these

individuals to ascertain what particular unconstitutional acts they are alleged to have

committed.").

More specifically, plaintiff has made no allegations regarding either State

defendant, Ryken and McGrew, who are mentioned only in the caption and the list of

the defendants contained in the text.  No allegations are made connecting these two

---

[8]Plaintiff states in his response to the State defendants' motion that the Colorado
Department of Human Services is a party to this action.  (Docket No. 24 at 7, ¶ 9).  That
department, however, has not been named as a party, nor is there any indication that it
has been served with process.

defendants to the alleged unconstitutional acts of the CDHHS.  Furthermore, plaintiff has not made any specific allegations regarding defendants Moss, Smith, Griffin, or Hartman.  Moss and Smith are merely mentioned as being part of "the combined Department Managers and staff delegated to correctly administer the implementation and operations of a child support program . . . ."  (Docket No. 2 at 2).  There is no other specific reference to these two defendants in the Amended Complaint.  Defendants Griffin and Hartman, who are sued in the role as Jefferson County Commissioners, are solely alleged to "have remained dormant and unresponsive" to plaintiff's complaints to them and "remained idle and unresponsive to their duty to administer a program that meets the requirements established under Federal provisions," and had "lack of oversight" and "jaded implementation of Jefferson County's Child Support Program." (Docket No. 2 at 12).  This court finds that the plaintiff has not adequately alleged the requisite personal involvement by these defendants in any constitutional violation.

In addition, plaintiff has not alleged facts sufficient to render his claim plausible. As noted by the County defendants, plaintiff claims that defendant Simpson was involved in several "Administrative Reviews," identified an "ambiguous arrearage amount," was notified of upcoming litigation involving contested child support and maintenance payments, and was notified of a December 1, 2008, hearing on behalf of the plaintiff's ex-wife.  Furthermore, the only allegation regarding defendants Redmond and Stokes is that they attended the December 1, 2008, hearing on behalf of plaintiff's ex-wife.  Such allegations do not indicate that these defendants personally participated in a deprivation of any protected interest, were personally responsible for any constitutionally impermissible level of process, or treated plaintiff differently from

similarly-situated individuals based upon some classification.

The court notes that in his responses to the motions to dismiss, plaintiff offers more information concerning the various defendants' purported roles in the alleged constitutional violations.  Plaintiff, however, has not further amended his pleading to include these additional averments.  Plaintiff may not effectively amend his pleading by alleging new facts in his responses to the motions to dismiss.  See In re Qwest Comm. Intern., Inc., 396 F. Supp.2d 1178, 1203 (D. Colo. 2004).  In evaluating the sufficiency of the plaintiff's allegations, the court is to evaluate only the allegations made in his Amended Complaint.  Nevertheless, even if these factual averments were contained in his pleading, this court finds that plaintiff has either still failed to allege the requisite personal involvement of the individual defendants or has failed to state a claim of constitutional magnitude against them.

Plaintiff asserts the following in his response regarding defendant Moss:

Debbie Moss - The program manager with the [JCCSS].  In April, 2010 Mediation had been established and attended by both Debbie Moss, and Katie Smith.  The Plaintiff, during this mediation discussed the disciplinary remedies that were administered by case worker Stephanie Simpson. The Plaintiff provided Katie Smith and Debbie Moss with indisputable proof of payments to the Obligee, Ms. Duffy [plaintiff's ex-wife] while case worker, Stephanie Simpson haplessly continued a barrage of career limiting, costly remedies.

Debbie Moss's Response to the Mediation in her letter dated May 24th, 2010 is as follows.

"The Department continued to enforce the then current child support order while your Motions were pending before the Court.  This enforcement included the Department opting not to suppress certain enforcement remedies during the months in which the currently ordered support was not being paid" (Exhibit 1)

Essentially acknowledging that the Department had no idea what the Plaintiff's arrearage was, if any.  As Debbie Moss confirms that the Department proceeded with enforcement remedies without knowledge that an arrearage existed.  As it has been determined, when the Motions were completed an overpayment existed.  Debbie Moss's letter affirms the execution of remedies without knowledge of an arrearage, and further when the Plaintiff was in compliance.   This creates a separation between what Civil Rights should be afforded to an individual, as to what Civil Rights he Plaintiff received.  The Department is obligated to enforce remedies on those individuals that don't pay their support obligation, however the Plaintiff maintained an overpayment, and the Department still invoked every possible remedy (with the exception of imprisonment).  Although the Plaintiff was compliant, he suffered the same remedial penalties as those that are not in compliance.

(Docket No. 18 at 3-4).

With regard to defendant Katie Smith, plaintiff asserts in his response:

<u>Katie Smith</u> - A supervisor with the [JCCSS].  The Plaintiff presented questions to Katie Smith during the Mediation relating to a review for modification that she had initiated.  The Plaintiff identified that the inclusion of child care in the child support calculation exponentially increased his obligation, and that those expenses were not occurring.  Further, the Plaintiff identified several factors that deemed the current obligation was presumably not correct.  The Obligee's child care documentation was highly suspect, and as it has now been established, whatever amount of child care that was paid, was done so through Marsa William's, Child Care Assistance Program (CCAP) and not the Obligee.  The Plaintiff requested three reviews for modification from Katie Smith, in which two were declined, and one was grossly inaccurate.  While Katie Smith was aware that the Obligor was receiving child care assistance through (CCAP), and had been for some time, she continued to include elaborate amounts for child care claimed by the Obligee on the child support worksheet.  Although there was little credibility as to the Obligee's claim for child care expenses, and certainly sufficient evidence to conclude otherwise, she continued to include excessive child care expense within the child support worksheet.

. . .

Katie Smith's reviews for modification conducted in July, 2010, and August, 2010, determined that the Obligee was paying well over $1,000 per month in child care, however the Plaintiff maintained custody of the children a majority of June, July, and August 2010.  Further, CCAP had

23

clearly paid the child care expenses for the prior months of March, April, and May 2010.  Certainly, as a parent would expect to pay for child care if needed, the Plaintiff is required to pay for child care whether the expense is occurred or not, and whether the expense is needed or not.  Contrary to parents who may incur expenses related to their children and thus pay them, the Plaintiff is treated differently at the hands of the Department.  This creates a Civil Rights violation and is certainly not what Congress had intended when establishing the Family Support Act.  Generally, parents are afforded the discretion to pay for a child care expense if needed, and necessary.  The Plaintiff, however, has been Ordered to pay the Obligee substantially more whether the child care expense occurs or not.

Katie Smith was very much aware of the Obligee had been receiving CCAP assistance, and that the Plaintiff maintained a majority of the custody with the children during the summer months.  Katie Smith repeatedly continued to insist on the inclusion of the Obligee's hypothetical child care costs.  This directly violates the Federal regulations . . . .

(Docket No. 18 at 4-6).

Regarding defendant Simpson, plaintiff states the following in his response:

Stephanie Simpson - Is a technician with the [JCCSS] and the Plaintiff's caseworker.  Ms. Simpson had commenced the following remedies upon the Plaintiff.

a)      Suspension of Plaintiff's Driver's License - October 22nd, 2008
b)      Lien & Levied Plaintiff's Bank Checking Account - November 6th, 2008
c)      Seizure of Federal Income Tax refund/Tax Offsets - March 2009
d)      Adverse Credit Reporting - Initiated in 2008 and is current remedy.
e)      Assignment of Arrearages - initiated in 2008 - through May 2010
f)      Garnishment of Wages - February 2009.
g)      Income Assignment - Initiated in 2009 and is a current remedy.

The Plaintiff established several Administrative Reviews with Stephanie Simpson and presented explicit documentation of every payment that had been submitted to the Obligee.  Stephanie Simpson never attempted to perform an accounting of the payments and monthly obligations.  She didn't bother to read the Separation Agreement that stated the Plaintiff was allowed to use payments of the Obligee's mortgage as credits towards maintenance.  She persisted with a multitude of remedies against the Plaintiff unsure whether or not they were warranted.  As it has been determined they were not warranted.  The remedies that Stephanie Simpson introduced the Plaintiff to further complicated employment

prospects, and added to the cost of financing.  Certainly, the Court may
understand that the inclusion of a suspended driver's license and a
severely hampered credit rating may invoke an employer to seek a
different candidate in a professional environment.  Stephanie Simpson's
carelessness has only harmed my children, and created a complicated
family environment, much more complex.

(Docket No. 18 at 8-9).

With regard to defendants Griffin and Hartman, plaintiff states in his response:

Faye Griffin and Kathy Hartman - Faye Griffin, and Kathy Hartman are the
Jefferson County Commissioners.  The Plaintiff would ask the Court to
note that Faye Griffin, and Debbie Moss both concluded the same action
in Jefferson County.  Enforcement remedies were taken first against the
Plaintiff, while the determination of the validity and appropriateness of the
remedies is obtained after the execution of the Plaintiff's penalties.  This is
a civil Rights violation, in which the Department has isolated a class of
citizen (unmarried fathers) and applied restrictions.  In the Plaintiff's case,
whether your [sic] compliant or noncompliant, remedies are still enforced.
Certainly, married parents aren't presented with this type of unwarranted
tactical abuse creating a segregation between parental classes.
Faye Griffin's Response on April 14, 2010 to my notification is as follows.

"We found that child support enforcement remedies resulted until
payments that did not go through the FSR could be credited as
child support".

"This occurred after resolution between Ms. Duffy and yourself was
reached.  A motion to Modify Child Support was filed by your
attorney in August, 2009; but the final order resolving the
modification of child support did not occur until mid-April, 2010".
(Exhibit 2)

As it has been noted Faye Griffin, Kathy Harman, and Debbie Moss, are
operating and overseeing a child support program that does not
acknowledge due process, federal safeguards are outlined under the
Social Security Act Title IV-D, and equal protection clauses.

(Docket No. 18 at 6-7).

Plaintiff states the following in his Response regarding defendants McGrew,

Ryken, and Beyle:

Leslie McGrew, Pam Ryken, and Karen Beyle - Are some of there representatives of the [CDHS] relating to child support evaluation and administration.  While Karen Beyle, and Pam Ryken have been notified on multiple occasions of the Plaintiff's concerns, only Leslie McGrew responded on July 19, 2010.

Leslie McGrew is an Evaluation Supervisor with the Colorado Division of CSE within the [CDHHS].  Presumably, Leslie McGrew was delegated by a managing official to conduct an administrative review to comply with U.S.C. 42- § 15512 - (Establishment of State-based administrative complaint procedures to remedy grievances).  Leslie McGrew's administrative review establishes that "personal participation" exists and is affirmed within her letter dated July 19th 2010, to the Plaintiff (Exhibit 1).  The [CDHS] acting through Leslie McGrew failed to identify evident violations related to due process safeguards in correlation to the application of remedies before the identification of an arrearage.  Leslie McGrew failed to adhere to the State Guidelines of Child Support Awards, thus overlooking the enforcement of remedies before the determination of the appropriateness in which they relate.  The modification of maintenance, suspect child care expenses, and reviews for modification that were either not administered, or done so erroneously, are elementary concepts in which a "Evaluation Supervisor" would be expected to identify.

. . . [quoting 42 U.S.C. § 15512]

Leslie's [sic] McGrew's response on July 19, 2010 to the Plaintiff is as follows.

> "When the CSE Unit opened your case in February 2008, a Family Support Registry (FSR) Payment Redirection Notice was mailed to you.  This Notice was based on the requirement in 26-13-114, C.R.S., that the State of Colorado established one central payment registry for the receipt and disbursement of all child support and/or maintenance payments for the State.  The Notice advised you that all payments made on court order 2006DR798 were mailed to the FSR from that point forward.  Because you only redirected your child support payments, and not your maintenance payments as ordered, you accrued a delinquency on your account from the time your case was opened by the CSE Unit in February 2008 to the time your maintenance obligation ended in August 2008". (Exhibit 4)

As stated by Leslie McGrew, child support was paid in its entirety; and as

it's been determined on April 12, 2010, maintenance was as well.  In addition, maintenance is modifiable in nature pursuant to the C.R.S. 14-10-122.  The Plaintiff asserts that Leslie McGrew's administrative review had obvious errors in which an Evaluation Supervisor with the Colorado Division of CSE within (CDHS) should be expected to identify.  The administrative review has cost the Plaintiff an extended duration with an artificial obligation, and the expense of producing this before a Court for a more complicated remedy.  Leslie McGrew carried the responsibility to establish a correct child support obligation, and identify any deficiencies relating to the County Defendants' remedies by conducting an administrative review under **U.S.C. 42-§15512, U.S.C. 42-§667.**  Leslie McGrew's analysis relates to the remedies that were disseminated upon the Plaintiff before a viable determination of the Plaintiff's guilt, and further relates to the fabricated child care expenses in which CCAP incurred the expense, rather than the Obligee.  It can be assumed that Leslie McGrew is aware of the necessary safeguards that should be taken for disputes in arrearages, and modifiability of maintenance, before the applications of remedies.

[quotes 42 U.S.C. §§ 654, 15512]

(Docket No. 24 at 4-7).

Even if the plaintiff were to have amended his pleading to include these allegations, he still has not stated a plausible claim for relief against the above defendants.  Plaintiff has not alleged that he was denied a hearing/administrative review of his requests for modification; instead, he disagrees with the determinations made.  Moreover, from the various responses plaintiff quotes, it appears that up until some time in 2010, most, if not all, of the administrative determinations were made based upon the December 2008 and January 2010 rulings of Magistrate Voisinet, the latter of which was allegedly overturned by District Court Judge Berryhill in April 2010, and the specific child support overpayment was not determined (and thus the enforcement remedies were not suspended) until after the latter, final ruling.  The administrative determinations were also apparently based, in part, upon evidence submitted by the plaintiff's ex-wife, which

plaintiff disputes.

Even assuming plaintiff has stated a plausible constitutional violation by these defendants in his additional averments, they would be entitled to qualified immunity for their actions.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Id.  "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  Id.

When a defendant raises a qualified immunity defense, as it has been here, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right."  Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir.

2001).  The Supreme Court has held that the federal courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. at 236.

"Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional."  Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841 (10th Cir. 2005).  "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."  Id. (quotations omitted).  To be clearly established:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted).  "Thus, qualified immunity leaves ample room for mistaken judgments, . . . and protects all but the plainly incompetent or those who knowingly violate the law."  Harman v. Pollock, 586 F.3d 1254, 1261 (10th Cir. 2009) (internal quotations omitted).

Here, plaintiff has made no showing that defendants' reliance upon court orders (including one pending appeal) or evidence submitted by the opposing party and their utilization of enforcement remedies until the issuance of a subsequent court order which established an overpayment violated a clearly-established constitutional or statutory right and that reasonable persons in the defendants' position would have known

29

their conduct violated that right.  Therefore, the above defendants would be entitled to qualified immunity.

Furthermore, plaintiff's response indicates that his claim against defendants Griffin and Hartman is based solely on their roles as County Commissioners and that plaintiff's claim regarding defendants Ryken and Beyle is merely that he notified them of his concerns.  Plaintiff has not adequately averred that these defendants were personally involved in any constitutional violation or that there is a sufficient causal connection between them and the alleged constitutional violations.  Therefore, plaintiff's claims against them that are contained in his response would be subject to dismissal.

Plaintiff asserts the following in his response with regard to defendants Redmond and Stokes:

> <u>Yolando Redmond & Casie Stokes</u> - These are the attorneys or representatives of [JCCSS] that attended the December 1, 2008 Court hearing.  **The Plaintiff admits that their involvement in relation to his case is vague.**  At the December 2008, Court hearing they seemed to be under the assumption, presumably by the Obligee that the Plaintiff was not paying any of his child support at all.  They sank in disappointment with the submission of exhibits and documentation that verified the Plaintiff's burden of proof that payments were being made accordingly.  These exhibits, and verified payments were physically provided to Yolanda Redmond and Casie Stokes during the December 1, 2008 Court hearing.  The exhibits were evidence that whatever amounts of arrearage produced by Stephanie Simpson, were incomplete, inaccurate, and certainly contested.  For whatever reason, Yolanda Redmond and Casie Stokes either did not present the exhibits to Stephanie Simpson, or Ms. Simpson again did nothing with them.

(Docket No. 18 at 9) (emphasis added).  As highlighted in the quote above, plaintiff admits that the involvement of defendants Redmond and Stokes are "vague."  This court agrees with these defendants that plaintiff's sole allegation against them in his response, that they may have failed to present certain exhibits to defendant Simpson, is

insufficient to state a § 1983 claim against them.

In sum, even if the plaintiff were to be permitted to further amend his pleading to include the claims and averments he has included in his responses to the motions to dismiss, such claims would be subject to dismissal.  Therefore, such amendments would be futile.

### Defendant Marsa Williams

As noted above, defendant Marsa Williams seeks dismissal of plaintiff's claim against her pursuant to Fed. R. Civ. P. 12(b)(6).  That claim is that Williams, and thus CCCAP (Aspen), denied the plaintiff access to records pertaining to Aspen's provision of assistance to or for the benefit of the plaintiff's children.  Plaintiff apparently believes his ex-wife has been inaccurately reporting aid from the state on her financial information forms, and thus he wants to know whether his ex-wife has received or receives benefits from Aspen so that his child support obligations may be decreased.

In her motion, Williams neither confirms nor denies that Aspen provided such assistance, but she affirmatively states that she declined the plaintiff's request for records if assistance was provided.  Williams asserts that "Aspen is an entity organized for the purpose of administering the Colorado Child Care Assistance Program for Jefferson County.  Aspen is authorized to provide these services on behalf of the County by title 26 of the Colorado Revised Statutes, and particularly by C.R.S. 26-2-801, *et seq.*  This statutory scheme's implementing regulations are located at 9 CCR 2503-1, Volume 3."  (Docket No. 22 at 2).  According to Williams, Aspen has declined to provide this information to the plaintiff due to privacy statute and confidentiality regulations.  She seeks dismissal on two grounds, namely, (1) plaintiff has no private

cause of action under the statutes cited in his pleading, and (2) as a matter of law,

Aspen is not permitted to reveal information about its applicants and thus may not be

held civilly liable for declining to do so.

Plaintiff has not filed a response to defendant Williams' motion and thus has

confessed this motion.  In any event, this court finds, for the reasons stated above, that

the plaintiff does not have a private cause of action based upon the statutes he cited in

his amended pleading.  Furthermore, because § 1983 requires the violation of a federal

right, a violation of state law does not necessarily amount to a violation of federal due

process requirements.  Peterson v. Peterson, 2004 WL 3426406, at *5 (D.N.M. Aug. 1,

2004).  In addition, this court finds that Williams' refusal to provide plaintiff with the

records requested does not rise to the level of a constitutional violation.  Therefore,

plaintiff's claim against Williams should be dismissed pursuant to Fed. R. Civ. P.

12(b)(6).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Plaintiff's Motion for Partial Remand (Docket No. 12) be

**denied**.  It is further

**RECOMMENDED** that the County Defendants' Motion to Dismiss (Docket No. 6)

be **granted**.  It is further

**RECOMMENDED** that the State Defendants' Motion to Dismiss (Docket No. 16)

be **granted**.  It is further

**RECOMMENDED** that Defendant Marsa Williams' Motion to Dismiss (Docket No.

22) be **granted**.  It is further

**RECOMMENDED** that the claims against unserved defendant Karen Beyle be dismissed pursuant to Fed. R. Civ. P. 4(m) unless plaintiff shows good cause for his failure to serve defendant Beyle timely.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives _de novo_ review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  August 26, 2011                         s/ Michael J. Watanabe
      Denver, Colorado                         Michael J. Watanabe
                                                United States Magistrate Judge